UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Iris Hernandez, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | Civil Action H-22-3633 | |
| § | | |
| Martin O'Malley,[1] § | | |
| Commissioner of the § | | |
| Social Security Administration, § | | |
| *Defendant.* § | | |

## MEMORANDUM AND RECOMMENDATION

Iris Hernandez appeals the Social Security Administration Commissioner's final decision denying her application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 13, and Defendant's Motion for Summary Judgment, ECF No. 16. These motions have been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 5. The court recommends that the Commissioner's final decision be **AFFIRMED**.

### 1. *Procedural Posture*

Hernandez applied for social security benefits under Titles II and XVI of the Social Security Act on April 9, 2020. Tr. 13, 102, 103, 140, 141. Hernandez alleged a disability onset date of January 7, 2016, after a motor vehicle accident caused, among other alleged impairments, major neurocognitive disorder due to traumatic

---

[1] Kilolo Kijakazi was the Acting Commissioner of the Social Security Administration when Iris Hernandez filed this case but no longer holds that office. Martin O'Malley is Commissioner of the SSA and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

brain injury; major depressive disorder – recurrent; generalized anxiety disorder; post-traumatic stress disorder; panic attacks; impaired saccadic movements; light sensitivity; vertigo; and chronic pain syndrome. Tr. 70–71, 86–87, 104–05, 122–23, 445. The SSA denied Hernandez's applications initially on January 13, 2021, and upon reconsideration on March 24, 2021. Tr. 102, 103, 140, 141.

At Hernandez's request, Administrative Law Judge (ALJ) Michael Leppala held a telephonic hearing on December 10, 2021. Tr. 162–63, 36–69. At the hearing, the ALJ heard testimony from Hernandez and a vocational expert (VE). Tr. 37. Hernandez's counsel was present and examined the witnesses. Tr. 55, 66.

Hernandez testified that she attended some college and worked at various companies as a graphic designer and animator. Tr. 42–44. Hernandez testified that she could not work because of difficulty focusing, poor memory, low energy, frequent feelings of drunkenness and confusion, and sensitivity to light, noise, and other distractions. Tr. 45–47. Hernandez testified that dizziness, confusion, and exhaustion made it difficult for her to brush her hair or complete chores such as vacuuming and sweeping. Tr. 46–47. Hernandez stated that her treatment included medication, talking with a therapist, and "physical treatments" that she was "inactive in" because of insurance reasons. Tr. 49. Hernandez stated that she had upper body pain and headaches and numbness twice or more daily. Tr. 57–58. Hernandez testified that she often got confused when, for example, attempting to prepare food and that she often needed to take breaks during which she would sit in a dark space. Tr. 61–62. Hernandez testified that her husband helped with driving, managing her health appointments, communicating with her doctors, and shopping for groceries. Tr. 49, 53.

The ALJ asked the VE to consider a person of Hernandez's age and education with the following limitations:

> capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for about six hours in an eight hour work day. And sitting for about six hours in an eight hour work day with normal breaks. This hypothetical individual is further limited to frequently climbing ramps or stairs, occasionally climbing ladders, ropes or scaffolds, frequently stooping, kneeling, crouching, and crawling. This hypothetical individual can understand, carry out, and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, co-workers, and work situations, deal with routine changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal work day. This hypothetical individual is limited to occasional interaction with co-workers, supervisors, and the general public.

Tr. 63–64. The VE opined that such an individual could not perform Hernandez's past work but could perform other work at the light exertional level such as merchandise marker, photocopy machine operator, and mail clerk. Tr. 64–65.

The ALJ issued his decision on January 7, 2022, finding that Hernandez was not disabled from January 7, 2016, through the decision date. Tr. 14. Hernandez requested review of the ALJ's decision, which the Appeals Council denied on August 10, 2022. Tr. 1–6. Hernandez timely filed a complaint and an application to proceed in forma pauperis in federal court on October 13, 2022. *See Hernandez v. Kijakazi*, 4:22-mc-01756, ECF No. 1 (S.D. Tex. Oct. 13, 2022).

### 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who

3

have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Both programs use the same standard to evaluate an applicant claiming disability. *See* 20 C.F.R §§ 404.1520, 416.920 (2020). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2020). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2020).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind

4

might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### *3. Analysis*

#### *A. Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2020). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2020).

The ALJ found that Hernandez had not engaged in substantial gainful activity since January 7, 2016, the alleged onset date. Tr. 15. This finding is not in dispute.

#### *B. Step Two*

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2020) (citing 20 C.F.R. § 404.1509); 20 C.F.R. § 416.920(a)(4)(ii) (2020) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c) (2020). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099

(5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2020).

The ALJ found that Hernandez had severe impairments of "[n]eurocognitive disorder due to traumatic brain injury (TBI), major depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD)[.]" Tr. 16. The ALJ found that Hernandez's non-severe impairments included neck and lower back pain, headaches with light and noise sensitivities, dizziness/imbalance, and obesity. *Id.*

The ALJ explained that, although Hernandez suffered physical symptoms and pain after her motor vehicle accident in January 2016, her cervical, thoracic, and lumbar spine disc herniations were "treated conservatively and . . . did not require surgical intervention." Tr. 16. The ALJ cited records showing that Hernandez had "normal" muscle tone in her extremities, strength ratings of "5," "intact" light-touch sensation, and a "steady" gait. *Id.* (citing Tr. 445–46, 476, 616, 875, 1130–31). The ALJ stated that Hernandez's headaches improved with Fioricet and that "clinical exams showed neurological and cognitive functioning within normal limits as related to her headaches[.]" *Id.* (citing Tr. 445, 476, 616, 875, 889, 1130–31). The ALJ commented that Hernandez did not take medication for her dizziness, that her audiology and brain imaging results were within normal limits, and that her gait and coordination were normal. *Id.* (citing Tr. 445–46, 476, 616, 875, 1130–31). The ALJ also considered Hernandez's obesity and found it had no significant impact on her physical functioning. *Id.* The ALJ explained that he considered all of Hernandez's impairments, both severe and non-severe, in assessing Hernandez's residual functional capacity. *Id.*

Hernandez argues that the ALJ erred by finding her TBI symptoms (e.g., neck and back pain, headaches with noise and

light sensitivity, and spinal injuries) to be non-severe. ECF No. 13 at 8–10. Hernandez argues that there are many records establishing the severity of her conditions. *Id.* at 8–9. The ALJ "acknowledge[d] that [Hernandez] suffered initial physical symptoms as a result of her motor vehicle accident," but found her symptoms did not rise to the level of a severe impairment. Tr. 16. The ALJ's considered many of the sorts of records that Hernandez claims he overlooked. For example, Hernandez points to the magnetic resonance images of her spine. ECF No 13 at 9. The ALJ cited records wherein Hernandez's provider reviewed her spinal imaging records and stated that her "cervicogenic headaches from the isolated disc herniation of the cervical spine and the concurrent neck pain have responded to the Fiorinal and this is encouraging and certainly hopefully will improve with time." Tr. 16 (citing Tr. 445, 476). The provider also stated that Hernandez's lumbar disc herniation "remains intermittently symptomatic" with "sciatica-like symptoms and localized back pain." Tr. 476. The ALJ also cited several mental status examinations revealing that Hernandez had "linear" thought processes, "normal" or "grossly intact" recent and remote memory, and "normal" or "fair" attention span/concentration and insight/judgment. Tr. 16 (citing Tr. 616, 875 889, 1130–31). Thus, the ALJ properly considered Hernandez's TBI symptoms and their effect on her physical and mental ability to do basic work activities. Hernandez's mere disagreement with the ALJ's determination does not constitute reversible error.

Hernandez also complains about the ALJ's statement that Hernandez's pain had been treated "conservatively," and did not require surgery. ECF No. 17 at 4–5. Hernandez argues that the word "conservatively" is not defined and that, under 20 C.F.R. § 404.1529(c)(3)(v), the ALJ may not consider possible treatments the claimant could have received but did not. The ALJ was merely making an observation that Hernandez did not require surgery.

7

The list of factors in the cited CFR section are merely those that the ALJ will consider. It is not an exclusive list. The ALJ did not err.

Even if the ALJ erred at step two, however, such error is harmless. The ALJ proceeded past step two in the sequential evaluation process and considered all of Hernandez's impairments, both severe and non-severe, including her TBI and her resulting symptoms. *See Esparza v. Saul*, Civil Action No. 3:19-CV-2284-L-BH, 2020 WL 6551272, at *13 (N.D. Tex. Oct. 2, 2020) (citing cases and stating "The Fifth Circuit has stated that a failure to make a severity finding at step two is not reversible error when an ALJ continues with the sequential evaluation process.").

### C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2020); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 (2020). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2020). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2020); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Id.*

The ALJ found that Hernandez did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing. Tr. 16–20.

The ALJ considered Listing section 11.18 regarding traumatic brain injury and determined that Hernandez did not

satisfy this section. Tr. 16. Hernandez does not challenge this finding.

The ALJ found that Hernandez's mental impairments, singly and in combination, did not meet or medically equal Listing section 12.02 (neurocognitive disorders); section 12.04 (depressive, bipolar, and related disorders); section 12.06 (anxiety and obsessive-compulsive disorders); or section 12.15 (trauma- and stressor-related disorders). Tr. 16. These Listing sections each have criteria set forth in paragraphs A, B, and C. Listing § 12.00(A)(2) (2020). To be found disabled at this step, a claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or both paragraphs A and C. *Id.* Paragraphs B and C are the same for each Listing the ALJ considered. Thus, a claimant who does not meet either of paragraphs B or C does not meet any of the Listing sections under consideration here.

The paragraph B criteria relate to four broad areas of mental functioning used in the work setting. Listing § 12.00(A)(2)(b) (2020). Those four areas are the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The ALJ must evaluate the claimant's ability to function in each area and determine whether the claimant has no limitation or a mild, moderate, marked, or extreme limitation. Listing § 12.00(F)(2) (2020) (limitation rating scale and definitions). To meet the paragraph B criteria, a disorder must result in an extreme limitation in one or a marked limitation in two of the four areas of mental functioning. *Id.*

The ALJ found that Hernandez had a mild limitation in adapting or managing oneself and had moderate limitations in understanding, remembering, or applying information; interacting with others; and in concentrating, persisting, or maintaining pace.

Tr. 17–20. The ALJ thus concluded that Hernandez did not satisfy the paragraph B criteria for any Listing. Tr. 20.

The ALJ also considered the paragraph C criteria. Tr. 20. To satisfy paragraph C, the claimant must prove her mental disorders are serious and persistent. The criteria require a medically documented history of the disorder over a period of at least two years and evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) marginal adjustment, *i.e.*, minimal capacity to adapt to changes in her environment or to demands not already part of her daily life. Listing §§ 12.02, 12.04, 12.06, 12.15 (2020); *see also* Listing §§ 12.00(G)(2)(b)–(c) (2020). The ALJ concluded that there was no evidence to support the existence of the paragraph C criteria. Tr. 20. Hernandez does not argue otherwise.

The court notes that, at the administrative level, the state agency medical and psychological consultants also found that Hernandez did not satisfy the paragraph B or paragraph C criteria. Tr. 77–78, 93, 112, 130. The ALJ found those opinions to be persuasive and supported by and consistent with the record evidence. Tr. 26. The ALJ's step three determination is supported by substantial evidence.

Hernandez does not challenge any specific finding made by the ALJ at step three. Instead, she argues that the ALJ erred by not obtaining a medical expert's opinion when determining that her impairments did not meet or medically equal any Listing impairment. ECF No. 13 at 10–13. Hernandez argues that, because the ALJ is a layperson and is unqualified to interpret raw medical data, the ALJ must obtain testimony from a medical expert when determining whether an impairment medically equals an impairment in the Listing. *Id.* at 10. Hernandez argues

that "the ALJ was duty-bound to call [a medical expert] to testify" and that he "based the medical equivalency on nothing more than [his] own lay opinion." *Id.* at 13.

The ALJ is not required to call a medical expert to testify when determining whether an impairment or combination thereof medically equals a Listing impairment. If the ALJ finds that the evidence does not reasonably support a finding of medical equivalence, the regulations "do not require the adjudicator to obtain [medical expert] evidence or medical support staff input[.]" SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).

The ALJ did not interpret raw medical data or impermissibly rely on his lay opinion. An ALJ may properly make a disability determination that is not an adoption of any medical opinion while still basing his decision on substantial evidence. *See Webster v. Kijakazi,* 19 F.4th 715, 719 (5th Cir. 2018) (concluding that although "the ALJ neither adopted the state agency report verbatim nor accepted the testimony of [a medical provider], it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."). Hernandez's argument that the ALJ impermissibly relied on his own lay opinion "is actually the ALJ properly interpreting the medical evidence to determine" whether Hernandez met or equaled an impairment in the Listing. *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012). The ALJ did not err.

Hernandez argues that the ALJ was duty-bound to call a medical expert to testify. ECF No. 13 at 13. The court understands this argument to be that the ALJ failed to properly develop the record. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Brown v. Saul,* 858 F. App'x 711, 713 (5th Cir. 2021) (quoting *Boyd v. Apfel,* 239 F.3d 698, 708 (5th Cir. 2001)). When an ALJ makes "an informed decision based on sufficient facts[,]" the ALJ fulfills the

duty to develop the record. *Id.* (quoting *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). Reversal of the ALJ's decision is proper only if the claimant shows that "he could and would have adduced evidence that might have altered the result." *Id.* (quoting *Brock*, 84 F.3d at 728). The mere assertion "that additional beneficial evidence might have been gathered . . . is insufficient" to show prejudice. *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012). At step three, it is the claimant's duty to "present medical findings equal in severity to *all* the criteria" of a Listing impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).

Here, Hernandez has not shown that she satisfied all criteria of an impairment in the Listing. Hernandez has not stated which Listing impairment she believes she medically equals. Hernandez also has not stated what a medical expert would have opined or considered had one been called to testify. There is no evidence that the ALJ's decision was not based on sufficient facts. The ALJ did not fail to develop the record.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (2020) (citing 20 C.F.R. § 404.1545); 20 C.F.R. § 416.920(e) (2020) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 4 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1) (2020). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e); 416.920(e) (2020); *see also* 20 C.F.R. § 416.945(a)(1) (2020); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c),

416.946(c) (2020); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").

The ALJ determined that Hernandez had the RFC to perform work at the light exertional level with the following limitations:

> [S]he is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She is further limited to frequently climbing ramps or stairs, occasionally climbing ladders, ropes, or scaffolds, frequently stooping, kneeling, crouching, and crawling. The Claimant can understand, remember, and carry out simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to occasional interaction with coworkers, supervisors, and the general public.

Tr. 20.

In reaching this RFC finding, the ALJ considered the entire record, including Hernandez's hearing testimony, medical records, and function reports prepared by Hernandez and her father. Tr. 21 (citing "Hearing Testimony;" Tr. 419, 423, 443–67, 588 (medical records); Tr. 281–92 (Hernandez's function report); and Tr. 306–18 (Hernandez's father's function report)). The ALJ compared Hernandez's self-reported symptoms and work limitations with the objective medical evidence and found that Hernandez's alleged limitations were "not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history

and degree of medical treatment required, and the Claimant's description of her activities of daily living[.]" Tr. 21. In support of that finding, the ALJ chronicled Hernandez's post-accident treatment records, records of several hospital visits, her medical and psychological treatment records, and expert evaluations. Tr. 21–27. In connection with each, the ALJ compared Hernandez's self-reported symptoms and limitations with the objective testing and findings. He concluded that:

> Overall, I find the Claimant's statements not fully consistent with the medical record. The record does show that the Claimant suffered cognitive and emotional deficits resulting from her MVA. However, when engaging in consistent treatment, . . . the Claimant's symptoms significantly improved. So much so, that she was able to return to work within a year of the accident. Clinical exams generally showed normal mental status functioning with some limitations in her short-term memory and attention/concentration.

Tr. 25.

The ALJ then explained how the medical records impacted his conclusions as to the limitations he included in the RFC. He considered Hernandez's reports of mental and physical fatigue, as well as her "deficits resulting from [her] non-severe neck and back pain, headaches, and dizziness," and limited Hernandez to only light work with several postural limitations. Tr. 25. Given Hernandez's neurocognitive disorder, depression, anxiety and PTSD, the ALJ found her able to understand, remember, and carry out only simple instructions, and maintain concentration, persistence, and pace for up to and including two hours. *Id.* He also found that Hernandez could tolerate no more than occasional interaction with coworkers, supervisors, and the general public. *Id.*

The ALJ also considered the opinion evidence in the record. Tr. 26–27. He found the opinions of the Disability Determination

14

Services (DDS) to be "persuasive overall." Tr. 26. He found the DDS opinions to be "supported by a thorough review of the evidence with citations and explanations for the Claimant's limitations up to the date of evaluation." *Id.* The ALJ also found that the DDS opinions were "also consistent with subsequent evidence . . . which continued to show largely good control of [Hernandez's] cognitive and emotional symptoms on conservative measures including medications and counseling." *Id.* The ALJ observed that the DDS opinions were consistent with medical evidence "indicating that the Claimant becomes more confused and agitated when she has to learn new or complex information." *Id.* The ALJ thus limited Hernandez to "be able to deal with only routine changes in the work setting." *Id.* Also, "[d]ue to her quick irritability, agitation, and confusion," the ALJ also found Hernandez "would be limited to occasional interaction with supervisors, coworkers, and the public." *Id.*

The ALJ considered neuropsychologist Larry Pollock, Ph.D.'s opinion that Hernandez's psychological deficits would make it difficult for her to quickly and accurately search for written materials, to process verbal information efficiently, to plan and organize, and to recall specific information. Tr. 26. The ALJ found Pollock's opinion to be "persuasive to some extent," and on that basis found Hernandez able to understand, remember, and carry out only simple instructions, to maintain pace for up to two hours, and to tolerate only occasional interaction with others. *Id.*

The ALJ considered neurologist Steven B. Inbody, M.D.'s opinion that Hernandez could live independently only if supervised. Tr. 27 (citing Tr. 472–73). The ALJ found Inbody's opinion to be unpersuasive because it was unsupported by examinations showing only mild cognitive abnormalities, Hernandez's ability to return to work, and Hernandez's ability to

perform most of her activities of daily living independently. *Id.* (citing 447, 587–93, 889, 1131, 1221).

The ALJ formulated the RFC after a thorough review and analysis of the record evidence. He considered, among other things, medical records, opinions, and Hernandez's statements about her symptoms and pain. The RFC is supported by substantial evidence and complies with the regulatory framework.

Hernandez argues that the ALJ's RFC assessment is inconsistent with her moderate mental limitations. ECF No. 13 at 5–7. Specifically, Hernandez argues that the ALJ's finding of moderate limitations in Hernandez's ability to concentrate, persist, and maintain pace is inconsistent with the ALJ's finding that Hernandez had the RFC to maintain concentration, persistence, and pace for up to and including two hours with normal breaks. Hernandez argues that such findings "are the makings of a normal workday without any consideration for the limitations" because "a normal workday includes a 15-minute break in the morning, a break for lunch, and a 15-minute break in the afternoon." *Id.* at 6, 7.

Hernandez is incorrect. As discussed, the ALJ included many limitations to account for her mental limitations, such as being able to receive only "simple" instructions and to interact with others only "occasionally." Tr. 20, 25–26. With respect to whether Hernandez could concentrate for up to two hours, following an October 2020 neuropsychological evaluation, the provider remarked that Hernandez "was able to sustain attention on tasks of varying duration and complexity for most of the session[,but] [t]oward the end of the session (after [two and a half] hours), she started to appear restless and appeared to have more difficulty concentrating." Tr. 589. Hernandez herself testified that she could "only . . . stay in focus . . . for, like, two hours or an hour and then have to take a break because I'd . . . feel kind of like drunk and,

like, confused[.]" Tr. 45. Thus, the objective and subjective evidence supports the RFC.

### *E. Step Four*

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2020); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2020). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2020).

Based on the VE's hearing testimony, Tr. 63–65, and Hernandez's RFC, the ALJ determined that Hernandez could not perform her past work. Tr. 27–28. This finding is supported by substantial evidence and is not in dispute.

### *F. Step Five*

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2020). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2020).

The ALJ found that Hernandez could perform jobs that exist in significant numbers in the national economy. Tr. 28–29. The ALJ relied on the VE's testimony that an individual of Hernandez's age, education, work experience, and RFC would be able to work as a merchandise marker, photocopy machine operator, or mail clerk. Tr. 28–29; *see also* Tr. 64–65 (VE's relevant testimony).

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations

17

reasonably recognized by the ALJ, and Hernandez's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence.

### *4. Conclusion*

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Hernandez's Motion for Summary Judgment, ECF No. 13, be **DENIED**; that the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**; and that the Commissioner's final decision be **AFFIRMED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 16, 2024.

Peter Bray
United States Magistrate Judge